**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: July 7 2025**

John P. Gustafson
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In Re: Tammy Anne Coger | ) | Case No. 25-30146 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| L. Bryan Carr Co. LPA | ) | Adv. Pro. No. 25-03010 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN P. GUSTAFSON |
| v. | ) | |
| | ) | |
| Tammy Anne Coger | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Merrill Lynch. | | |
| | | |
| Defendant(s). | | |

## <u>MEMORANDUM OF DECISION AND ORDER</u>

This adversary proceeding is before the court on Plaintiff L. Bryan Carr Co. LPA's Motion for Judgment on the Pleadings ("the Motion") [Doc. #14], Defendant-Debtor Tammy Coger's Response to Motion for Judgment on the Pleadings [Doc. #16], and Plaintiff's Reply [Doc. #17].

Plaintiff is a law firm that represented Defendant-Debtor in a pre-Petition divorce action in the domestic relations court. [Doc. #1, p. 2, ¶¶4 & 7]. Defendant-Debtor Tammy Coger is the debtor in the underlying Chapter 7 bankruptcy case filed in this court on January 29, 2025. *See*, [Case No. 25-30146]. On February 21, 2025, Plaintiff filed a Complaint against Defendant-Debtor and Merrill Lynch [Doc. #1]. On March 4, 2025, Defendant-Debtor filed a timely Answer to the Complaint. [Doc. #3]. After the court granted a Joint Motion to Extend Time for Merrill Lynch to file an Answer, Plaintiff and Merrill Lynch agreed to dismiss Merrill Lynch as a Defendant in this adversary case.[1]

Plaintiff's Motion for Judgment on the Pleadings is made under Federal Rule of Civil Procedure 12(c), made applicable in bankruptcy Adversary Proceedings by Federal Rule of Bankruptcy Procedure 7012.[2] Having reviewed the briefs filed on this matter, the Motion for Judgment on the Pleadings will be Denied.

## BACKGROUND

Plaintiff asserts it is an Ohio legal corporation, providing legal services in matters including domestic relations matters. [Doc. #1, p. 2, ¶4]. On or about July 21, 2023, Defendant-Debtor, retained Plaintiff to represent her in a divorce proceeding filed in the Cuyahoga County Domestic Relations Court, *Rikie L. Coger v. Tammy A. Coger*, Case No. DR-23-395474. [Doc. #1, p. 2, ¶7; Doc. #3, p. 2, ¶7].

---

[1]/ Merrill Lynch is asserted to be a neutral custodian of the 401(k) account at issue in this case. The Order dismissing Merrill Lynch required it to: restrict the account per the Stipulation (pending further court direction), assist in facilitating any future court-ordered transfers, and remain available for third-party discovery, without liability for taxes or market fluctuations [Doc. #10].

[2]/ To be clear, Plaintiff is seeking judgment on the allegations of its own Complaint (which is not based on either *res judicata* or collateral estoppel) and the specific admissions in Defendant's Answer. No state court judgment is part of the record before this court.

2

Debtor's divorce case was extensively litigated from July, 2023 to May, 2024, and a trial was scheduled for May 21, 2024. [Doc. #1, p. 2, ¶8; Doc. #3, p. 2, ¶8]. As part of the state court divorce proceeding, Plaintiff's Complaint states that Defendant-Debtor was entitled to receive, at most, $47,000 from her husband's 401(k) Plan. [Doc. #1, p. 2, ¶9].

Defendant admits: "While negotiating Debtor's divorce settlement, Plaintiff and Debtor discussed the Debtor's attorney fees obligation that had been incurred up to that point. The Plaintiff advised that, at that time, the outstanding attorney fees were approximately $16,000." [Doc. #1, p. 3, ¶11; Doc. #3, p. 2, ¶11].

The Complaint alleges that Debtor advised Plaintiff that she did not have the ability to pay Plaintiff's fees. [Doc. #1, p. 2-3, ¶¶11]. Debtor's Answer admits she had indicated that she did not have the ability to pay Plaintiff's attorney fees. [Doc. #3, p. 2, ¶¶11-12].

Plaintiff's Complaint further asserts: "At that time, the Debtor instructed the Plaintiff to negotiate/obtain additional funds from her husband's BLET 401(k) Plan, which the Debtor would then hold for the Plaintiff, as the funds would be the Plaintiff's property/money as and for Plaintiff's attorney fees. Debtor indicated she would make small payments to Plaintiff and then pay Plaintiff when the BLET funds were transferred to her." [Doc. #1, p. 3, ¶12]. In contrast, Defendant's Answer to this portion of Paragraph 12 states: "Plaintiff had agreed to keep Defendant informed regarding the current fees owed. As Plaintiff failed to do so, Defendant was unaware the fees were so high. Defendant repeatedly expressed serious concerns regarding Defendant's ability to withdraw the funds from BLET 401(K) to pay Plaintiff's fees." [Doc. #3, p. 2, ¶12].

In the next paragraph, Plaintiff states: "Given the aforementioned discussions with Debtor (and representations by Debtor), the Plaintiff was able to negotiate/obtain $75,000 from Debtor's husband's BLET 401(k) Plan (virtually all of the funds in the BLET) in the divorce settlement.

3

Thus, a portion of the BLET 401(k) is, in fact, the Plaintiff's funds/property and is not part of the Debtor's bankruptcy estate. Rather the Debtor is holding funds in the BLET in trust for the Plaintiff pursuant to the Debtor's representations, the Plaintiff's efforts and the parties' agreement." [Doc. #1, p. 3, ¶12].

Defendant-Debtor's Answer to this allegation states: "Defendant admits in part and denies in part the allegations contained in paragraph 13. Plaintiff did negotiate a larger portion of the BLET 401(K) for Defendant. Defendant agreed to attempt to pay Plaintiff from the BLET 401(K) funds. There was no meeting of the minds regarding paying Plaintiff from the BLET 401(K) funds. Plaintiff insisted Defendant would be able to do so and Defendant continued to express serious concerns over Defendant's ability to pay Plaintiff from the BLET 401(K) funds." [Doc. #3, p. 2, ¶12].

After the divorce was finalized, Plaintiff alleges that he continued to perform legal services and incur out-of-pocket expenses. [Doc. #1, p. 3, ¶14].

The parties dispute whether the Defendant-Debtor was obligated to hold and use the 401(k) funds in trust for the Plaintiff's legal fees. Plaintiff asserts that Defendant-Debtor agreed to hold the 401(k) funds in trust and use them to satisfy her legal fees. [Doc. #1, p. 3, ¶¶12-13].

Debtor however appears to believe that she was not obligated to use the 401(k) funds to pay Plaintiff, and/or had concerns as to whether she could access or use the 401(k) funds to pay Plaintiff. [Doc. #3, p. 2, ¶¶12-13].

The Complaint states that on or about October 15, 2024, the $75,000 in 401(k) funds was transferred to Debtor.[3] [Doc. #1, p. 3, ¶15].

---

[3]/ The funds at issue appear to still be held in a 401(k) account at Merrill Lynch.

4

Plaintiff's Complaint states that: "Debtor told Plaintiff that she could not withdraw Plaintiff's portion/funds due to 'income concerns.' Debtor then represented to Plaintiff that she requested documents from Merrill Lynch to obtain a 'loan' on the BLET 401(k) to pay Plaintiff its funds. Debtor never paid Plaintiff its funds from the BLET and then failed to respond to Plaintiff." [Doc. #1, pp. 3-4, ¶15]. The Answer responds: "Defendant admits in part and denies in part the allegations contained in paragraph 15. Defendant has consistently expressed concerns over Defendant's ability to pay Plaintiff from the BLET 401(K) funds. Defendant will loss [sic] sources of income Defendant depends on for survival if Defendant withdraws the funds from the BLET 401(K) funds to pay Plaintiff. Defendant was willing and able to obtain a loan against the BLET 401(K) funds to pay Plaintiff. Plaintiff objected to Defendant obtaining said loan." [Doc. #3, p. 3, ¶15].

On January 29, 2025, Debtor filed for Chapter 7 bankruptcy. [Case No. 25-30146, Doc. #1]. The Complaint alleges that in filing the bankruptcy, Debtor was: "looking to avoid paying Plaintiff its property, her debt, her representations and to retain funds that are not her property." [Doc. #1, p. 4, ¶16]. Debtor-Defendant admits she filed bankruptcy, but states that it was to discharge all her debts and obtain a fresh start, asserting that the debt owed to Plaintiff (as listed on the petition) is less than half of Defendant's unsecured debt. [Doc. #3, p. 3, ¶16].

In "Count One" of the Complaint, Plaintiff asserts that the elements for non-dischargeability are met under Sections 523(a)(2), (a)(4) and (a)(6), and that Plaintiff reasonably relied on the statements of Defendant. On the first count, Plaintiff asserts it is entitled to judgment in the amount of $17,437.09, which the court should hold non-dischargeable. [Doc. #1, p. 4, ¶¶18-24]. The second count alleges that the BLET 401(k) belongs to Plaintiff, or that Defendant-Debtor

5

is holding the 401(k) in trust for Plaintiff. [Doc. #1, p. 5, ¶¶25-29]. Defendant-Debtor's Answer denies all of the allegations in Count One and Count Two.

Plaintiff's Motion for Judgment on the Pleadings points to Defendant's Answer as confirming several material facts central to Plaintiff's Claims. The Motion states:

. . . Defendant has admitted the following:

First, the Defendant admits that she engaged the Plaintiff to represent her in her divorce. (Plaintiff's Complaint, Paragraph 7)

Second, the Defendant admits that her divorce case was extensively litigated from July, 2023 to May, 2024. (Plaintiff's Complaint, Paragraph 8)

Third, the Defendant admits that rather than try the divorce case, the parties directed their efforts at settlement. (Plaintiff's Complaint, Paragraph 10)

Fourth, Defendant admits that on May 21, 2024 while negotiating the divorce settlement, she and Plaintiff discussed her attorney fee obligation (the amount she owed Plaintiff) at that point. (Plaintiff's Complaint, Paragraph 11)

Fifth, the Defendant admits that she did not have the ability to pay the Plaintiff's attorney fee obligation/invoice. (Plaintiff's Complaint, Paragraph 12)

Sixth, Defendant admits Plaintiff negotiated a larger portion of her ex-husband's 401(k). Defendant goes on to state that she agreed to "attempt" to pay Plaintiff from the 401(k). (Plaintiff's Complaint, Paragraph 13)

**Significantly, in response to Paragraph 15 of Plaintiff's Complaint (in which Plaintiff referenced Defendant's false representations and failures to respond to Plaintiff) Defendant states: "Defendant was willing and able to obtain a loan against the 401(k) funds to pay Plaintiff."** This is an admission to the Plaintiff's allegations and, specifically, the agreement that Plaintiff would negotiate additional funds from Defendant's ex-husband's 401(k), which were Plaintiff s attorney fees. Query: Why else would Defendant look to obtain a loan on the 401(k), unless there was an agreement with the Plaintiff that a portion of the funds in the 401(k) were Plaintiff's? There would be absolutely no reason for the Defendant to inquire about obtaining a loan on the 401(k) unless there was an agreement with Plaintiff. Further, and going back to Defendant's Answer (Paragraph 15,) it makes absolutely no sense for Plaintiff to "object to Defendant obtaining said loan" on the 401(k) to pay Plaintiff its fees - as that is what the additional funds were for. This is a bad faith, nonsensical, attempt by Defendant to avoid her obligation. Simply, Defendant has admitted the allegations Plaintiff set forth in its Complaint. To summarize: (1) An agreement was reached; (2) Representations were made; (3) Funds not belonging to Defendant were transferred to her (to hold for Plaintiff); and (4) Defendant admitted to this.

> *Significantly, the Defendant's Answer never denies the fact that the Plaintiff obtained more of her ex-husband's 401 (k) for payment of her attorney fees.* The Defendant knew the amount she owed and made her agreement with the Plaintiff. Defendant's admission to the fact that she "was willing and able to obtain a loan against the 401(k)" is fatal to her position.

[Doc. #14, pp. 2-4].

Defendant, in opposing Plaintiff's motion, avers that she retained Plaintiff for representation in her divorce [Doc. #16, p. 1, ¶1]; that she and Plaintiff discussed the use of her 401(k) funds to satisfy her attorney fee obligation [*Id.*, p. 2, ¶¶2-3]; that Plaintiff obtained a more favorable settlement on her behalf [*Id.*, ¶5]; and that a debt is owed [Doc. #16, p. 2].

In the Reply, Plaintiff alleges that the facts, as admitted and reiterated by Defendant, confirm that the funds in question are not property of the estate, but rather funds held in trust for Plaintiff pursuant to the parties' agreement and Defendant's own representations. *See*, [Doc. #17, pp. 1-2].

## RULE 12(c) STANDARD

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012. The court evaluates a motion for judgment on the pleadings in the same manner as it reviews a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006); *see also*, *In re K&L Trailer Leasing, Inc.*, 630 B.R. 81, 86 (Bankr. E.D. Tenn. 2021)(citing *Jackson v. Prof'l Radiology, Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)(quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973); *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)("Courts apply the same standard for Rule 12(c) motions as for Rule 12(b)(6) motions, which are granted only when the court finds, after taking as true "all well-pleaded material allegations of the pleadings of the

opposing party ..., [that] 'no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'").

Thus, under Rule 12(c), "well pleaded material allegations of the opposing party's pleading are to be taken as true and all inferences are to be taking in favor the nonmoving party." 10 Collier on Bankruptcy ¶7012.06 (16th ed.), citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); s*ee also, Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020)(citation omitted).

The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss, the "manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6)." *Vickers*, 453 F.3d at 761, *accord Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021)(citation omitted). "But we 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (citation omitted). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.*

However, in cases like the present one, where the party moving for judgment on the pleadings is the plaintiff rather than the defendant, the showing required is: "on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *See*, *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 2021 WL 4502862, at *3, 2021 U.S. Dist. LEXIS 189756 at *9 (M.D. Tenn. Sept. 30, 2021), *aff'd*, 51 F.4th 197 (6th Cir. 2022).

"This standard generally provides a substantial advantage for a defendant . . . opposing a plaintiff's 12(c) motion." *Id.* 2021 WL 4502862, at *3, aff'd, 51 F.4th 197 (6th Cir. 2022).

>Plaintiffs rarely use the Rule 12(c) procedure, so few cases discuss the standards for reviewing such a motion. But one thing is clear: any factual allegation denied by the answer must be taken as false when assessing a plaintiff's Rule 12(c) motion. *See Dist. No. 1., Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019); *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *see also* 61A Am. Jur. 2d Pleading § 497 (2022) ("Allegations of a complaint that are specifically denied by the answer must be eliminated from consideration in determining a plaintiff's motion for judgment on the pleadings."); 61A Am. Jur. 2d Pleading § 505 (2022) ("[A]ll allegations of the moving party which have been denied or controverted are taken as false.").

*United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 210 (6th Cir. 2022)(Larsen J., dissenting).

## LAW AND ANALYSIS

The Complaint asserts two counts: 1) Debtor knowingly made false and misleading representations, concealed material facts with the intent to deceive Plaintiff, and fraudulently induced Plaintiff to provide legal services based on justifiable reliance, resulting in $17,437.09 in damages that Plaintiff alleges are nondischargeable under 11 U.S.C. §§523(a)(2)(A), (a)(4), and (a)(6). *See*, [Doc. #1, p. 4, Count One, ¶¶18-24]; and, 2), a portion of the 401(k) listed in Debtor's bankruptcy petition constitutes Plaintiff's legal and/or equitable property held in trust by Debtor, is not part of the bankruptcy estate, and supports a nondischargeable judgment of $17,437.09 plus interest. [*Id.*, p. 5, Count Two, ¶¶26-29].

# I. Plaintiff's Claims.

## A. Sections 523(a)(2)(A), (a)(4), and (a)(6).

Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

### i. *11 U.S.C. §523(a)(2)(A)*

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services...to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ."  In order to except a debt from discharge under this section, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.

Under §523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *In re Childers*, 651 B.R. 699, 718 (Bankr. N.D. Ohio 2023)(quoting *First Citizens Nat'l Bank of Upper Sandusky v. Mann (In re Mann)*, 646 B.R. 444, 455 (Bankr. N.D. Ohio 2022); *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009).

"False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false

impression while a false representation involves an express representation.'" *Coughlin Chevrolet,*

*Inc. v. Thompson* (*In re Thompson*), 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011)(quoting *Goldberg*

*Securities, Inc. v. Scarlata* (*In re Scarlata*), 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also*,

*Wentland*, 410 B.R. at 594.

In addition to "false representation" and "false pretenses," the Supreme Court has held

that §523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not

require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S.

355, 136 S.Ct. 1581, 1587, 194 L.Ed.2d 655 (2016); *see also, Mellon Bank, N.A. v. Vitanovich (In*

*re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001). "Actual fraud" includes fraudulent

transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l*

*Elecs., Inc.*, 136 S.Ct. at 1587.

A debtor's intent to defraud a creditor is measured by a subjective standard and must be

ascertained through review of the totality of the circumstances. *Rembert,* 141 F.3d at 281-82; *see*

*also*, *Brann v. Oxford (In re Oxford)*, 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010). A finding of

fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course

of conduct," given that direct, express proof of intent is rarely available. *Hamo v. Wilson (In re*

*Hamo),* 233 B.R. 718, 724 (6th Cir. BAP 1999) (quoting *Hunter v. Sowers* (*In re Sowers*), 229

B.R. 151, 159 (Bankr. N.D. Ohio 1998)); *Oxford*, 440 B.R. at 777.

Here, Plaintiff alleges that the Defendant-Debtor engaged in deceptive and fraudulent

conduct per §523(a)(2)(A) with respect to breaching an agreement. That agreement is the 401(k)

Agreement (hereinafter referred to as the "401(k) Agreement") whereby Plaintiff asserts: (1)

Plaintiff would obtain more money from the ex-husband's 401(k) in the state court matter; (2) the

money would be used to pay Plaintiff for its services; and (3) not paying Plaintiff, despite assuring

11

the Plaintiff that she would use the funds to pay it and/or obtain a loan against the 401(k) to pay her attorney's fees. [Doc. #16, p. 4]. Plaintiff further alleges that Defendant-Debtor knowingly provided false and misleading "representations (and concealments)" with the intent to deceive Plaintiff and induce reliance. [Doc. #1, p. 4, ¶¶19-23]. Plaintiff avers that it relied on these representations to its detriment, resulting in significant and ongoing financial losses. [*Id.*].

Neither party submitted affidavits nor the written contract (if one exists) establishing the terms of the 401(k) Agreement. The Fee Agreement, consisting of two pages, does not make reference to the 401(k), or any lien rights of the law firm. [Doc. #1, Ex. A]. The Fee Agreement states:

> . . . I will represent you on an hourly fee basis. . . .
>
> It is my policy to serve you with the most effective support systems available, while at the same time allocating costs of such in accordance with the extent of usage by individual clients. Therefore, certain costs incurred on your behalf in rendering legal services, such as travel expenses, investigators and experts, are payable by you, Invoices for such items may be forwarded directly to you for payment, or if advanced by the firm, may be billed directly to you as the expense is incurred. The billing of advanced expenses will appear on a billing statement the month following the period the costs were actually incurred.

[Doc. 1, p. 6, Ex. A].

Thus, viewing Defendant-Debtor's Answer and Response in the light most favorable to her as the non-moving party, there is a factual question – unresolvable on this Motion for Judgment on the Pleadings - as to whether any such "401(k) Agreement" ever existed. Standing alone, this warrants denial of judgment on the pleadings under Section 523(a)(2)(A), and every other allegation in Plaintiff's Complaint.

In addition, there are other issues. Even if there was a "401(k) Agreement", there is a lack of uncontroverted evidence as to whether Defendant, at the time she allegedly instructed Plaintiff

to pursue monies from the ex-husband's 401(k), intended to use the funds for the purpose of paying her attorney's fees. This question generally requires the court to consider the totality of the circumstances, and at trial may include consideration of Defendant's subsequent failure to remit payment, her statements regarding her financial constraints, and her efforts or lack thereof to obtain a loan from the 401(k).

While the facts asserted by Plaintiff may, in combination with additional facts adduced at trial, support an inference of intent, the existence of other plausible explanations - such as liquidity issues, misunderstanding about restrictions on accessing retirement funds, or changing financial circumstances - are also relevant to the court's determination of Debtor's intent at the time of the alleged 401(k) Agreement. In other words, there still remains genuine issues of triable fact as to: 1) whether Defendant-Debtor made material misrepresentations – that were false at the time they were made - and/or whether Debtor otherwise acted fraudulently at the outset of the alleged 401(k) Agreement; and, 2) whether Defendant-Debtor entered into the 401(k) Agreement with an intent to defraud Plaintiff. *See*, *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1591 ("Section 523(a)(2)(A) applies only when the fraudulent conduct occurs at the inception of the debt . . . .").

Given the lack of a written contract between the parties from which definite terms of the alleged 401(k) Agreement could be determined, and the absence of documentation or other evidence regarding Defendant-Debtor's representations, Plaintiff has not presented the clear evidence needed for this court to grant judgment on the pleadings. In other words, the court finds that the relatively sparse evidentiary record at hand raises issues of disputed fact sufficient to render judgment on the pleadings inappropriate. Accordingly, taking Defendant-Debtor's allegations as true (as is required under Rule 12(c)) and viewing those facts in the light most favorable to Defendant-Debtor (as is required under Rule 12(c)), the court must deny the Motion.

13

Even if there was a written agreement, cases in which courts have analyzed the propriety of a dispositive motion in the context of a contract and/or agreement further weigh against this court's granting Plaintiff judgment on the pleadings. In *Hunter*, for example, this court noted that "proof of a breach of contract does not support a Section 523(a)(2)(A) finding." *In re Hunter*, 535 B.R. 203, 218 (Bankr. N.D. Ohio 2015). Even if the court found that the 401(k) Agreement existed, and Defendant breached that Agreement, mere breach is not sufficient (in and of itself) for non-dischargeability. The issue under Section 523(a)(2)(A) would be Defendant-Debtor's intent at the time of the alleged 401(k) Agreement, not the fact that there was a subsequent breach of that alleged Agreement.

Further, what the Bankruptcy Code makes non-dischargeable is a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained by*" the various forms of fraud. *See*, §523(a)(2)(A) (emphasis added); *and see generally*, *In re Childers*, 651 B.R. 699 (Bankr. N.D. Ohio 2023). In short, there is a genuine issue of material fact as to what Debtor-Defendant's intent was at the time the 401(k) funds were "obtained" and what, in fact, what obtained by the Debtor-Defendant as a result of the 401(k) Agreement.

Initially, there is a question as to what was "obtained" by Defendant's alleged fraud. It appears that Plaintiff's Complaint asserts that $16,000 was owed at the time the alleged 401(k) Agreement was entered into. [Doc. #1, p. 3, ¶11]("The Plaintiff advised that, at that time, the outstanding attorney fees were approximately $16,000."). It is unclear why, even if Plaintiff were to prevail on its non-dischargeability claim, that the damages that could be awarded based on the theories alleged, would not be $1,437.09 – the different between the $16,000 owed at the time of the alleged "Agreement" and the amount [$17,437.09] Plaintiff asserts as its total debt at the time of filing. [*Id.*, p. 4, ¶¶23, 24]. If the Plaintiff only provided an additional $1,437.09 in

uncompensated services in reliance on the alleged fraud, it is not clear why the facts, even as alleged by Plaintiff, would support a finding that the original debt for $16,000 was somehow fraudulently, or otherwise wrongfully, incurred.

Notably, it has been held that the frustration of collection efforts – even by an allegedly fraudulent scheme – does not necessarily transform a debt for breach of contract into a non-dischargeable debt. *See*, *Walker v. Vanwinkle (In re Vanwinkle)*, 562 B.R. 671, 677-78 (Bankr. E.D. Ky. 2016); *Norton v. Wilson (In re Wilson)*, 2017 WL 1628878 at *8, 2017 Bankr. LEXIS 1176 at *26 (Bankr. N.D. Ohio May 1, 2017)(citing *Vanwinkle*).

The court finds that *Hunter* supports the denial of judgment on the pleadings in favor of the Plaintiff. In this case, the court is faced with an even sparser record than *Hunter*, containing conflicting assertions, references to facts surrounding the 401(k) Agreement which has been disputed, and an attorney's fee agreement which makes no reference to being paid on contingency of obtaining 401(k) funds or any funds. [Doc. 1, pp. 6-7, Ex. A]. Additionally, the available facts allow for inferences to be drawn both for and against Defendant-Debtor's allegedly fraudulent intent with regards to the 401(k) Agreement such that the court finds "a subjective assessment" based upon trial testimony to be appropriate. *See*, *Desmond v. Varasso* (*In re Varasso*), 37 F.3d 760, 764 (1st Cir. 1994).

Accordingly, the court will deny Plaintiff's Motion for Judgment on the Pleadings as to the §523(a)(2)(A) claim.

*ii. 11 U.S.C. §523(a)(4)*

Plaintiff alleges that the Debtor owes a debt that is nondischargeable under 11 U.S.C. §523(a)(4), which excepts from discharge debts "for fraud or defalcation while acting in a fiduciary

15

capacity, embezzlement, or larceny." [Doc. #1, p. 1, ¶2, p. 4, ¶24, p. 5, ¶(A)]; 11 U.S.C. §523(a)(4). However, Plaintiff's claim under §523(a)(4) fails for several reasons.

Here, Plaintiff has not identified whether it seeks nondischargeability under §523(a)(4) based on fraud or defalcation in a fiduciary capacity, embezzlement, or larceny, which raises concerns for the court per Federal Rule of Civil Procedure 8(a) and Rule 9(b),[4] which requires pleading with particularity.

To the extent Plaintiff is pursuing a claim based on a fiduciary relationship, its allegations fall short. The Complaint asserts that "the Debtor instructed the Plaintiff to negotiate/obtain additional funds from her husband's BLET 401(k) Plan, which the Debtor would then hold for the Plaintiff, as the funds would be the Plaintiff's property/money as and for Plaintiff's attorney fees." [Doc. #1, p. 3, ¶12]. But "[t]he mere failure to meet an obligation while acting in a fiduciary capacity does not rise to the level of defalcation; an express or technical trust must also be present." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005).

Whether a party acted in a "fiduciary capacity" for purposes of §523(a)(4) is determined by federal, not state law. *In re Blaszak*, 397 F.3d at 390. The Sixth Circuit construes "fiduciary capacity" as used in §523(a)(4) more narrowly than the term is used in other circumstances. *Id.* In order to trigger the fraud or defalcation provision in the statute, a debtor "must hold funds in trust for" the benefit of "a third party." *Id.* (citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)). The types of trusts which trigger the fraud or defalcation provision of §523(a)(4) are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Blaszak*, 397 F.3d at 390

---

[4] Made applicable by Rules 7008 and 7009 of the Federal Rules of Bankruptcy Procedure.

(citing *In re Garver*, 116 F.3d at 180). In *Davis v. Aetna Acceptance Co.*, the Supreme Court instructed that the term "fiduciary capacity" is "narrower here than it is in some other contexts: § 523(a)(4) covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

While lawyers have fiduciary duties to clients, clients do not have fiduciary duties to lawyers.[5] The existence of the alleged trust relationship – if that is Plaintiff's claim under Section 523(a)(4) – is not established by Defendant-Debtor's admissions. Similarly, the element of a "defalcation" has not been admitted by Defendant-Debtor. *See*, *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273-274, 133 S.Ct. 1754, 1759-1760, 185 L.Ed.2d 922 (2013).

Nor do the allegations support non-dischargeability for larceny (as there is no allegation that the funds came into Debtor's hand wrongfully, nor has property been carried away). If Plaintiff's action is based on embezzlement, there must be proof of fraudulent intent. *See*, *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274–275, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013)(noting that both embezzlement and larceny require a showing of wrongful intent—such as a showing of moral turpitude, intentional wrong, or felonious intent). Moreover, the funds in issue have not been "converted"[6] – they are still in the 401(k) account.

---

[5]/ "The duties of clients to lawyers are less extensive than those of lawyers to clients. Lawyers owe special duties because clients entrust them with important and sensitive matters, and because the legal system requires diligent and devoted performance of that trust (see § 16, Comment b)." Restatement (Third) of the Law Governing Lawyers 3d, §17, cmt. a (2025).

[6]/ *Bullock v. BankChampaign, N.A.*, 569 U.S. at 275, 133 S.Ct. at 1760 ("'embezzlement' requires conversion"). For there to be a "conversion", Plaintiff must show: "(1) plaintiff's ownership or right to possession of the property at the time of conversion; . . ." *Dice v. White Family Cos.*, 173 Ohio App.3d 472, 477, 878 N.E.2d 1105, 1109 (2nd Dist. Ct. App. 2007). As previously stated, based on the record and the procedural posture of the Motion, the court cannot find an enforceable agreement on the record before it.

On Plaintiff's Motion for Judgment on the Pleadings, with the facts limited to admissions by Defendant, and those facts viewed through the lens "most favorable to the non-moving party", Plaintiff's Motion as to the §523(a)(4) claim is denied.

### iii. *11 U.S.C. §523(a)(6)*

Section 523(a)(6) provides that a debt arising out of a "willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the discharge injunction. *See*, *Dardinger v. Dardinger* (*In re Dardinger*), 566 B.R. 481, 493 (Bankr. S.D. Ohio 2017). Given that the word "willful" directly modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Schafer v. Rapp* (*In re Rapp*), 375 B.R. 421, 435-36 (Bankr. S.D. Ohio 2007)(quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 976-77, 140 L.Ed.2d 90 (1988)). A "willful" injury is one where the debtor "either desires to cause the consequences of his actions or believes 'that the consequences are substantially certain to result' from his actions." *Id.* at 436 (quoting *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999)(internal quotations omitted)); *see also*, *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 307 (6th Cir. BAP 2004). In other words, the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz*, 190 F.3d at 465 n.10; *Trantham*, 304 B.R. at 307.

The Complaint does not allege that Debtor acted "willfully and maliciously". Instead, the Complaint uses the term: "fraudulently and maliciously". [Doc. #1, p. 4, ₱₱21-22].

Not only must the injury be "willful," it must also be "malicious" in order satisfy §523(a)(6). A "malicious" injury is one where the debtor has acted "in conscious disregard of

18

[his] duties or without just cause or excuse." *Dardinger*, 566 B.R. at 493 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)); *see also*, *Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 923 (6th Cir. 2000). Conscious disregard of duty or a lack of justification is sufficient; the debtor does not need to "act with ill will, spite, or animosity towards the injured party" to have acted maliciously within the meaning of §523(a)(6). *Rapp*, 375 B.R. at 436 (citing *Grange Mut. Cas. Co. v. Chapman* (*In re Chapman*), 228 B.R. 899, 909 (Bankr. N.D. Ohio 1998)).

The record's lack of evidence regarding Defendant-Debtor's intent at various points in time prevents a grant of judgment on the pleadings under §523(a)(6). *See*, *Radabaugh*, 307 F.3d at 467. While Plaintiff claims that Defendant-Debtor's actions were intentional and malicious, it appears that the main factual allegation is that Plaintiff was not paid. [Doc. #1]. As such, it appears that "a subjective assessment" of Defendant-Debtor's credibility regarding her intent via trial is warranted here.

The requirement that the court take Defendant's statements as true and view them in the light most favorable to Defendant, weighs against the granting of judgment on the pleadings on Plaintiff's §523(a)(6) claim at this early stage of the proceeding. *See*, *Rivera*, 338 B.R. at 327; *Varasso*, 37 F.3d at 764. The "intent to injure" requirement set forth by the Supreme Court in *Kawaauhau v. Geiger* is difficult to meet at trial. It is not met here.

Accordingly, the court will deny Plaintiff's Motion for Judgment on the Pleadings as to the §523(a)(6) claim.

19

B. **The Assertions Regarding Plaintiff's Interest in the BLET 401(k).**

Plaintiff asserts that the 401(k) account is not property of Defendant-Debtor's bankruptcy estate. While this is a true statement of the status of the 401(k) account, it is not true because of Plaintiff's alleged interest in the account.

It is black letter, Supreme-Court-authority law that ERISA qualified 401(k) retirement accounts do not become property of a bankruptcy estate when the account holder files a bankruptcy. *See*, *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 510 (1992). Under 11 U.S.C. Section 541(c)(2), an exclusion to the otherwise broad definition of "property of the estate" contained in §541(a)(1) of the Code: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy law* is enforceable in a case under this title." *Patterson*, 504 U.S. at 757, 112 S.Ct. 2246 (emphasis added by *Patterson*).

In *Patterson*, the Supreme Court held that the anti-alienation provisions of 29 U.S.C. §1056(d)(1), 26 U.S.C. §401(a)(13), and 26 C.F.R. §1.401(a)-13(b)(1) all qualify as "applicable non-bankruptcy law", preventing ERISA qualified retirement plans, like the one in issue here, from becoming property of the bankruptcy estate.

Of course, the fact that federal law protects 401(k) accounts from alienation under these statutes and regulations presents the question of why an attorney charging lien is so powerful that it can override the federal laws that protect ERISA accounts from all other civil process. *See*, U.S. Constitution, "the Supremacy Clause", Article VI, Clause 2.

Looking at the interest Plaintiff has asserted in the 401(k) account, the Ohio Supreme Court has noted:

A charging lien is "[a]n attorney's lien on a claim that the attorney has helped the client perfect, as through a judgment or settlement." Black's Law Dictionary 1108 (11th Ed. 2019). "There is no statute in this state which gives to an attorney a lien upon his client's cause of action and provides a remedy for the enforcement of such lien." *Pennsylvania Co. v. Thatcher*, 78 Ohio St. 175, 192, 85 N.E. 55, 58 (1908). What was true in 1908 is true today: Ohio—unlike a majority of states, 23 Lord, Williston on Contracts, Section 62:11 (4th Ed. 2019)—has no statute addressing how and when an attorney's charging lien attaches or how it can be enforced. Instead, in Ohio, charging liens are recognized and enforced under the common law.

*Kisling, Nestico & Redick, L.L.C. v. Progressive Max. Ins. Co*., 158 Ohio St.3d 376, 378, 143 N.E.3d 495, 498 (Ohio 2020).

It appears that most attorney charging lien claims arise in contingent fee cases, and there is authority that an equitable lien can arise – perhaps even without the client's consent – in such cases. *Mancino v. City of Lakewood*, 36 Ohio App.3d 219, 224, 523 N.E.2d 332, 337 (1987)("where the parties have contracted that the attorney shall receive a specified amount of the recovery, such agreement will operate as an equitable lien in favor of the attorney"). However, there is no allegation here that the underlying litigation was a contingent fee case.

As to the property subject to a "charging lien", the *Kisling* court stated: "The charging lien follows the fund, not a particular person. '[P]roceedings to enforce such [attorney's] lien[s] are considered as proceedings *in rem* and may be enforced only against the proceeds of a judgment secured in the particular case.'" *Kisling*, 158 Ohio St.3d at 379, 143 N.E.3d at 499 (citations omitted). In this case, the "fund" that Plaintiff seeks to impose with a common law charging lien is an ERISA qualified 401(k) account protected by federal anti-alienation provisions. Plaintiff does not address why the interest it asserts is not subject to these above cited federal prohibitions against either voluntary or involuntary alienation.

Ohio law also provides that funds in an ERISA qualified 401(k) account are exempt. *See*, O.R.C. §2329.66(A)(10)(b); *In re DeVries*, 650 B.R. 869, 877-878 (Bankr. N.D. Ohio 2023)("R.C. 2329.66(A)(10), subpart (b) does apply to retirement benefits such as a 401k plan provided through private employers."). It is not clear whether Ohio law would permit an attorney charging lien to attach to exempt property.[7] Notably, Debtor listed the BLET account (value of $76,000) as being exempt in her Schedule C. [Case No. 25-30146, Doc. #1, p. 23]. A review of the docket reflects that no timely objection to that claim of exemption was filed by any party in interest. *See*, Section 522(*l*); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647-1648, 118 L.Ed.2d 280 (1992).

*Kisling* also holds that: "An attorney's special or charging lien is a nonstatutory, common law equitable lien arising out of the express agreement between an attorney and a client that the attorney receive a specified amount of the recovery in a case." *Kisling*, 158 Ohio St.3d at 381, 143 N.E.3d at 500-501, *citing*, *Rust v. Harris-Gordon*, 1998 WL 526774 at *1, 1998 Ohio App. 3784 at **2-3 (6th Dist. Ct. App. Aug. 21, 1998).

Here, even if a charging lien could overcome the federal law and state law protections associated with 401(k) accounts, there are factual issues as to whether an "express agreement" was entered into at all. Sufficient proof of an "express agreement" is not presented in the pleadings before the court. Moreover, there are Ohio cases, such as *Rust*, that state: "However, a mere assertion of the agreement, absent submission of a writing, is insufficient as a matter of law to give rise to the [attorney charging] lien. *Rust v. Harris-Gordon*, 1998 WL 526774 at *1, 1998 Ohio App. 3784 at *3; citing, *Minor Child of Zentack v. Strong*, 83 Ohio App.3d 332, 335, 614 N.E.2d 1106, 1108 (8th Dist. Ct. App. 1992)("We hold that a naked affidavit by an attorney, without a

---

[7] It should be noted that the funds in issue are still in a 401(k) account. They have not been removed, or dissipated, or used to acquire other property. *See*, *DeVries*, 650 B.R. at 879-880.

copy of the agreement of the parties or an affidavit of the attorney's client admitting to a contingent fee agreement, is insufficient as a matter of law to operate as proof of an equitable lien in favor of the attorney.").

Another issue relating to the absence of any written agreement is Ohio Rule of Professional Conduct 1.8(a), which requires a lawyer seeking to "acquire an ownership, . . . security, or other pecuniary interest adverse to a client unless all of the following apply:"

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed to the client in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction;

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Ohio R. of Pro. Conduct §1.8(a).

Even if this provision of the Rules of Professional Conduct does not apply to require a writing, consent sufficient for an "express agreement" requires informed consent on the part of the client. Nothing in the pleadings reflect what information was provided by counsel to Defendant-Debtor before her alleged agreement to provide Plaintiff - her attorney - with some alleged interest in the 401(k) account.

Finally, the enforcement of an Ohio attorney charging lien may have prerequisites that have not been met here:

Ordinarily, the enforceability of a charging lien is dependent on the power of the court in which the fund was created: " ' "An attorney's lien is enforceable through the control the courts have of their judgments and records, and by means of their own process." ' " *Galloway v. Galloway*, 2017-Ohio-87, 80 N.E.3d 1225,

23

¶ 9 (8th Dist.), quoting *Fire Protection Resources, Inc. v. Johnson Fire Protection Co*., 72 Ohio App.3d 205, 209, 594 N.E.2d 146 (6th Dist.1991), quoting *Babin v. Royal Indemn. Co*., 28 Ohio N.P.(N.S.) 148, 153, 1930 WL 2837 (1930). " ' "[U]ntil a judgment is fully executed, the court retains jurisdiction of the subject matter and the parties for the purpose of hearing any motion affecting such judgment, and if the attorney desires to have his lien established and declared against such judgment, he may apply to the court for that purpose." ' " *Id*., quoting *Fire Protection Resources* at 209, 594 N.E.2d 146, quoting *Babin* at 153. As far back as 1880, this court has stated that the compensation of the attorneys "should be worked out by application to the court holding the fund, and in which the services were rendered." *Olds* [*v. Tucker*], 35 Ohio St. [581] at 584 [(Ohio 1880)].

*Kisling*, 158 Ohio St.3d at 379-380, 143 N.E.3d at 499.

If Ohio law requires that a charging lien must be requested and then created/enforced by a court with authority to do so, and the court with the power to impose it is the state court where the action was pending - that is not this court.

## CONCLUSION

In evaluating a Rule 12(c) motion for judgment on the pleadings brought by the Plaintiff, the court must determine whether, on the facts in the Complaint admitted to by Defendant, and assuming the material allegations in the Answer to be true, the Plaintiff is entitled to judgment as a matter of law. For all of the reasons stated above, at this stage in the proceedings, and in light of the material factual assertions in the Answer, the court finds that there is no basis for entry of Judgment on the Pleadings under Rule 12(c).

**THEREFORE**, for the foregoing reasons, good cause appearing.

**IT IS ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings, [Doc. #14], be, and hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that this matter will proceed at the previously scheduled pretrial.

**IT IS SO ORDERED**.